Jay A. Zweig (011153)
Mitchell L. Turbenson (033278)
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:    602.798.5500
Facsimile:     602.798.5595
Email:   zweigj@ballardspahr.com
             turbensonm@ballardspahr.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Elvis Garcia, Erika L. Spurgeon, Rivaldo Godinez,<br><br>Plaintiffs,<br><br>vs.<br><br>Clayton W. Coady and Jane Doe Coady; Applewood Animal Hospital, LLC, dba Applewood Pet Resort; Coady Enterprises Inc., an Arizona corporation,<br><br>Defendants. | No. 2:19-cv-05437-JJT<br><br>**DEFENDANTS' TRIAL MEMORANDUM OF LAW** |

Pursuant to the Court's Orders, Defendants Clayton W. Coady, Applewood Animal Hospital, LLC, dba Applewood Pet Resort ("Applewood"), and Coady Enterprises, Inc. (collectively, "Defendants") hereby submit this brief Trial Memorandum of Law.

**I.      Legal Standard for FLSA Overtime Claims and Calculating Regular Rate**

Under the Fair Labor Standards Act ("FLSA"), an employer cannot permit a non-exempt employee to work more than forty hours in a workweek unless the employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207. In other words, a non-exempt employee must receive one and one-half times the regular rate as an overtime premium.

There are two ways to calculate a "regular rate" for purposes of determining an overtime premium. First, and most easily, the parties can mutually agree to a regular rate.

*See Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 (9th Cir. 1975) (determining whether an employee/employer "viewed [the employees] hourly rates of pay as anything other than the per hour arithmetical averages of [the employees'] weekly salaries"); *see also Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 801 (9th Cir. 1981) ("[W]hen a weekly salary is paid, the employer is deemed to have paid the same rate for all hours worked, rather than the requisite overtime compensation, unless it can demonstrate the existence of a mutual agreement regarding the regular rate to be paid for the first forty hours.").

   Second, and if there is no agreement, the following is the method for determining compensation during weeks when the employee worked more than 40 hours:

  a. The regular hourly rate of pay is computed by adding together total wages from the workweek.

  b. This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the employee's "regular rate" for that week.

  c. For overtime work, the employee is entitled to be paid, in addition to the total weekly earnings, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked over 40 in the week.

  d. For example:

    i. If the employee has worked 50 hours and has earned $523.00 for 50 hours of work, $523.00 must be divided by the total hours of work (50) to arrive at the regular hourly rate of pay—$10.46.

    ii. One-half of the hourly rate of $10.46 is $5.23. For the 10 hours of overtime, the employee is entitled to additional compensation of $52.30 (10 hours of overtime at $5.23).

    iii. For the week's work the employee is thus entitled to a total of $575.30 (which equals $523.00 plus the $52.30 of premium overtime pay).

1  29 C.F.R. §§ 776.4, 778.109, 778.111.

2  To prevail on an overtime claim, a plaintiff must prove each of the following facts
3  by a preponderance of the evidence:

4    a.    That the Spurgeon and Godinez were employed by the Applewood;

5    b.    That Spurgeon and Godinez were engaged in commerce or in the production
6        of goods for commerce;

7    c.    That Spurgeon and Godinez worked more than 40 hours in a workweek for
8        Applewood; and

9    d.    Applewood did not pay Spurgeon and Godinez the overtime pay as required
10        by law.

11  29 U.S.C. § 207(a), (g); 29 C.F.R. § 778.111; *Anderson v. Mt. Clemens Pottery Co.*, 328
12  U.S. 680, 687 (1946) (recognizing a plaintiff must prove the number of unpaid hours
13  worked); 29 C.F.R. § 785.11; *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414
14  (9th Cir. 1981) ("[W]here an employer has no knowledge that an employee is engaging in
15  overtime work and that employee fails to notify the employer or deliberately prevents the
16  employer from acquiring knowledge of the overtime work, the employer's failure to pay
17  for the overtime is not a violation of § 207"); *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir.
18  1986) (placing on the employee/plaintiff the burden of proving the employee/plaintiff
19  performed work for which he was not compensated).

20  Here, Defendants will present evidence that neither Plaintiff can meet their burden
21  to show the existence of each fact. Specifically, as to Erika Spurgeon, Defendants will
22  present evidence that during her employment relationship with Applewood, she
23  approached Applewood to request that she work full-time at Applewood, so that she could
24  quit her part-time job doing housekeeping at a Scottsdale hotel, and that she and
25  Applewood agreed to a set regular rate of pay for her. The agreement with Spurgeon and
26  Applewood also involved Applewood and Spurgeon agreeing that, contingent on Spurgeon
27  working the hours that she promised to work, that her compensation, with overtime, would
28  result in her being paid $1,450.00 per pay period. But the evidence will show that

Spurgeon regularly failed to work the hours that she had agreed to work, yet, as a result of administrative errors, Spurgeon was actually *overpaid* by Applewood during the time period at issue, based upon the agreed upon regular rate of pay. In other words, Spurgeon was fully paid, indeed overpaid, for the hours that she worked, and is not entitled to overtime or any damages in this lawsuit.

With regard to Plaintiff Rivaldo Godinez, Defendants have stipulated that he is entitled to certain overtime pay for hours he worked for Applewood over 40 hours in certain workweeks, and those amounts are not at issue at trial.  But Plaintiff Godinez is improperly claiming additional damages related to hours that he worked for independent contractors who operated their dog grooming businesses in a separate building on Applewood's premises. Applewood will present evidence that hours Godinez worked for independent-contractor groomers, for which the groomers paid him in cash, and for which he has no documentation of hours worked or cash received, cannot factor into his regular rate calculation for purposes of his separate employment by Applewood.  Further, while Defendant Clayton Coady generously provided Godinez with free housing during his employment as a charitable, gratuitous act, Coady giving Godinez a room in his home where he could stay was not a condition or requirement of his Applewood employment; therefore, Plaintiff's after the fact valuation of Coady's personal generosity in providing Godinez with a room does not factor into Godinez's regular rate of pay calculation. Other than the amounts that Applewood has already agreed, Godinez has no valid FLSA claims.

**II.     Groomers Working at Times at Applewood Were Correctly Classified as Independent Contractors and Were Not Godinez's Joint Employers with Applewood.**

Godinez is expected to testify that for a brief period of time he helped the independent contractor dog groomers who conducted their business at a separate building from his job at Applewood's premises. The groomers are expected to testify that Godinez's work helping them wash dogs was very limited and that they paid him in cash. They are also expected to testify that they conduct their businesses as independent contractors and

are not employed by Applewood, nor did they jointly employ Godinez with Applewood. Whether a person is considered an independent contractor or employee is determined by a non-exhaustive list of factors, including:

    a. The degree of the alleged employer's right to control the manner in which the work is to be performed;

    b. The alleged employee's opportunity for profit or loss depending upon his managerial skill;

    c. The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

    d. Whether the service rendered requires a special skill;

    e. The degree of permanence of the working relationship; and

    f. Whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citing *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)).

    Second, two or more employers may jointly employ someone for purposes of the FLSA and joint employers are jointly and severally liable for FLSA violations with respect to their employees. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); 29 C.F.R. § 791.2(f); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). The question of whether an entity is a joint employer is a legal question for the court to resolve. *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004) (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)). The Ninth Circuit applies the *Bonnette* economic reality test to determine whether an entity is an employer under the FLSA, which considers whether the alleged joint employer:

    a. Had the power to hire and fire the employees;

    b. Supervised and controlled employee work schedules or conditions of employment;

    c. Determined the rate and method of pay; and

        d.        Maintained employment records.

*See Bonnette*, 704 F.2d at 1470; *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 U.S. Dist. LEXIS 93806, at *7–9 (D. Ariz. July 10, 2014) (using the *Bonnette* factors to determine question of joint employment).

Courts within the Ninth Circuit use the *Torres-Lopez* factors "to supplement the *Bonnette* factors when determining joint employment," which include:

        a.        Whether the work was a specialty job on the production line

        b.        Whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;

        c.        Whether the premises and equipment of the employer are used for the work;

        d.        Whether the employees had a business organization that could or did shift as a unit from one worksite to another;

        e.        Whether the work was "piecework" and not work that required initiative judgment or foresight;

        f.        Whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;

        g.        Whether there was permanence in the working relationship; and

        h.        Whether the service rendered is an integral part of the alleged employer's business.

*Montoya*, 2014 U.S. Dist. LEXIS 93806, at *8–9 (citing *Torres-Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997)).

Here, evidence will show that the groomers Godinez performed very limited work for were correctly classified as independent contractors (as opposed to employees) of Applewood. Specifically, the evidence will show groomers who sometimes work at Applewood are independent contractors given the lack of control Applewood has over the groomers' work, the ability for the groomers to set their own schedule and fix their own rates, the groomers' responsibility for their own supplies and performing their own

advertising, the special skill required to be a pet groomer, and the state licensing scheme to be a groomer, among the other factors. These facts (and the fact that the groomers classify themselves as independent contractors) overwhelmingly show that the groomers Godinez sometimes assisted were not Applewood employees.

Further, evidence will show that the groomers cannot be considered "joint employers" with Applewood. In addition to the above facts, Godinez's employment relationship with any groomers who happened to work at Applewood's property was entirely separate from his employment with Applewood—indeed, Applewood lacks any discretion on who the groomers hire to assist their work and Godinez was not supervised by Applewood in requesting work from the groomers. Additionally, the decision that Godinez made to do limited dog washing for the groomers in exchange for them paying him in cash, and the groomers' decision to work with and pay him, were not supervised or controlled by Applewood. Thus, any work Godinez performed for the groomers and any pay he received for that work from the groomers does not factor into Godinez's regular rate or hours worked wage calculations. Based upon the evidence to be presented at trial, Godinez's claim for unspecified hours worked and undisclosed amounts of cash paid by the groomers fails as a matter of law.

**III.   Legal Standard for Whether an Employee's Housing Is Factored into His Regular Rate Calculation**

Housing provided to an employee is only considered part of the employee's "wages" for purposes of calculating the regular rate if such housing is customarily furnished to the employer's employees. *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945); *see also* 29 U.S.C. § 203(m) (defining "wage" to include the "the reasonable cost, as determined by the Administrator [Secretary], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."); 29 C.F.R. 778.116 (recognizing cost of lodging included as part of calculating the regular rate if it is "regarded as part of wages"). Housing is "customarily" furnished only if "the facilities are

1  furnished regularly by the employer to his employees or if the same or similar facilities are
2  customarily furnished by other employees engaged in the same or similar trade, business,
3  or occupation in the same or similar communities." 29 C.F.R. § 531.31.

4        Here, evidence will show that Coady provided Godinez a room in homes that he
5  and his business owned as a nice gesture, because Godinez told him that he did not have
6  anywhere to stay, and not as a condition of Godinez's employment. The evidence expected
7  at trial is, as Godinez has admitted, he was not required to live in the free housing offered
8  by Coady to work at Applewood. Indeed, no evidence exists that Coady provided housing
9  to all Applewood employees, who were performing the work that Godinez performed, so
10 Coady providing Godinez with free housing cannot be considered "customary" as a matter
11 of law. Finally, no evidence can be presented that pet resorts like Applewood, located in
12 urban areas (Applewood is located near Lincoln Drive and Scottsdale Road) customarily
13 provide employees with housing. Thus, the estimated value of the free room to stay in
14 cannot factor into Godinez's regular rate calculation as a matter of law.

15 **IV.    Legal Standard for Whether an FLSA Violation Was Willful**

16       The Supreme Court has recognized that "willful" in the context of the FLSA refers
17 "to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128,
18 133 (1988). In the Supreme Court's view, an employer does not act "willfully" if it merely
19 knew "the FLSA was in the picture." *Id.* Rather, an employer acts "willfully" if it "knew or
20 showed reckless disregard for the matter of whether its conduct was prohibited by the
21 statute." *Id.*

22       In the alternative to Defendants' arguments, if the Court finds any violation of the
23 FLSA, such a violation was not willful given Plaintiffs were paid based on the information
24 available to Defendants. Indeed, there is no evidence that Applewood knew about the
25 wages and hours Godinez worked for groomers; there is no evidence that Coady was
26 operating with anything but good faith in offering Godinez housing; and there is no
27 evidence that Applewood did not understand it was operating under an agreement as to
28

wages with Spurgeon. There was no willfulness, and FLSA liquidated damages do not apply.

RESPECTFULLY SUBMITTED this 20th day of May, 2021.

BALLARD SPAHR LLP


By  /s/ *Mitchell L. Turbenson*
Jay A. Zweig
Mitchell L. Turbenson
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Attorneys for Defendants