Jay A. Zweig (011153)
Mitchell L. Turbenson (033278)
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:   602.798.5500
Facsimile:   602.798.5595
Email:   zweigj@ballardspahr.com
          turbensonm@ballardspahr.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Elvis Garcia, Erika L. Spurgeon, Rivaldo Godinez,<br><br>Plaintiffs,<br><br>vs.<br><br>Clayton W. Coady and Jane Doe Coady; Applewood Animal Hospital, LLC, dba Applewood Pet Resort; Coady Enterprises Inc., an Arizona corporation,<br><br>Defendants. | No. 2:19-cv-05437-JJT<br><br>**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Pursuant to the Court's Orders and Federal Rule of Civil Procedure 52(a), Defendants Clayton W. Coady, Applewood Animal Hospital, LLC, dba Applewood Pet Resort ("Applewood"), and Coady Enterprises, Inc. (collectively, "Defendants") hereby submit their Proposed Findings of Fact and Conclusions of Law.

**PROPOSED FINDINGS OF FACT**

1. Applewood is a pet resort and animal hospital located in Paradise Valley, Arizona.

2. Erika L. Spurgeon and Rivaldo Godinez are former employees of Applewood Pet Resort.

3. Applewood's gross volume of sales made or business done was greater than $500,000 at all times relevant.

4. Clayton Coady is a shareholder of Coady Enterprises, Inc., which operates Applewood.

DMWEST #41568048 v1

**Facts Relevant to Godinez's Claim**

5. During Godinez's employment, he worked the following hours and was paid the following amounts for each pay period:

| Rivaldo 2017 | | Week 1 | | | | | Week 2 | | | | | Wages Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Reg time | over time | Week pay | Under pay | Reg time | over time | Week pay | Under pay | | | |
| 2/19 | 3/4 | 0 | | | | 32.25 | | $322.50 | $0.00 | $322.50 | | $322.50 |
| 3/5 | 3/18 | 25.5 | | $255.00 | $0.00 | 23.5 | | $235.00 | $0.00 | $490.00 | | $490.00 |
| 3/19 | 4/1 | 29.5 | | $295.00 | $0.00 | 30.5 | | $305.00 | $0.00 | $600.00 | | $600.00 |
| 4/2 | 4/15 | 28.25 | | $282.50 | $0.00 | 25.5 | | $255.00 | $0.00 | $537.50 | | $537.50 |
| 4/16 | 4/29 | 23 | | $230.00 | $0.00 | 23.5 | | $235.00 | $0.00 | $465.00 | | $465.00 |
| 4/30 | 5/13 | 40 | 10.5 | $505.00 | $52.50 | 40 | 10.25 | $502.50 | $51.25 | $956.25 | | $1,007.50 |
| 5/14 | 5/27 | 40 | 10.5 | $505.00 | $52.50 | 40 | 12.5 | $525.00 | $62.50 | $967.50 | | $1,032.50 |
| 5/28 | 6/10 | 40 | 28.5 | $685.00 | $142.50 | 40 | 15.75 | $557.50 | $78.75 | $1,163.75 | | $1,242.50 |
| 6/11 | 6/24 | 40 | 11.5 | $515.00 | $57.50 | 40 | 13.25 | $532.50 | $66.25 | $981.25 | | $1,047.50 |
| 6/25 | 7/8 | 40 | 16 | $560.00 | $80.00 | 40 | 21.25 | $612.50 | $106.25 | $1,066.25 | | $1,171.50 |
| 7/9 | 7/22 | 40 | 18.75 | $587.50 | $93.75 | 40 | 20.5 | $605.00 | $102.50 | $1,090.00 | | $1,192.50 |
| 7/23 | 8/5 | 40 | 12 | $520.00 | $60.00 | 40 | 12 | $520.00 | $60.00 | $980.00 | | $1,040.00 |
| 8/6 | 8/19 | 40 | 8 | $480.00 | $40.00 | 40 | 9 | $490.00 | $45.00 | $925.00 | | $967.50 |
| 8/20 | 9/2 | 40 | | $400.00 | $0.00 | 40 | 2.25 | $422.50 | $11.25 | $811.25 | | $822.50 |
| 9/3 | 9/16 | 40 | 0.25 | $402.50 | $1.25 | 38.75 | | $387.50 | $0.00 | $790.00 | | $790.00 |
| 9/17 | 9/30 | 39.5 | | $395.00 | $0.00 | 40 | 2 | $420.00 | $10.00 | $805.00 | | $815.00 |
| 10/1 | 10/14 | 39.75 | | $397.50 | $0.00 | 40 | 5.75 | $457.50 | $28.75 | $826.25 | | $855.00 |
| 10/15 | 10/28 | 38.75 | | $387.50 | $0.00 | 36.5 | | $365.00 | $0.00 | $752.50 | | $752.50 |
| 10/29 | 11/11 | 39.25 | | $392.50 | $0.00 | 37.75 | | $377.50 | $0.00 | $770.00 | | $770.00 |
| 11/12 | 11/25 | 37 | | $370.00 | $0.00 | 36.75 | | $367.50 | $0.00 | $737.50 | | $737.50 |
| 11/26 | 12/9 | 37.5 | | $375.00 | $0.00 | 38.5 | | $385.00 | $0.00 | $760.00 | | $760.00 |
| 12/10 | 12/23 | 36.5 | | $365.00 | $0.00 | 40 | | $400.00 | $0.00 | $765.00 | | $765.00 |
| 12/24 | 12/31 | 40 | 7.75 | $477.50 | $38.75 | 10 | | $100.00 | $0.00 | $577.50 | | $580.00 |
| 2018 | | | | | | | | | | | | |
| 1/1 | 1/6 | | | | | 30 | 0.75 | $322.88 | $3.94 | $318.94 | | $322.00 |
| 1/7 | 1/20 | 40 | 0.25 | $422.63 | $1.25 | 38.25 | | $401.63 | $0.00 | $824.25 | | $1,084.13 |
| 1/21 | 2/3 | 25.25 | | $265.13 | $0.00 | 30.75 | | $322.88 | $0.00 | $588.00 | | $588.00 |
| 2/4 | 2/17 | 36.75 | | $385.88 | $0.00 | 40 | 20 | $630.00 | $105.00 | $910.88 | | $1,015.88 |
| 2/18 | 3/3 | 40 | 9.75 | $522.38 | $48.75 | 40 | 10.25 | $527.63 | $53.81 | $996.19 | | $1,050.00 |
| 3/4 | 3/17 | 40 | 17 | $598.50 | $85.00 | 40 | 11.75 | $543.38 | $61.69 | $1,080.19 | | $1,138.73 |
| 3/18 | 3/31 | 40 | 14.75 | $574.88 | $73.75 | 40 | 8.25 | $506.63 | $43.31 | $1,038.19 | | $1,081.50 |
| 4/1 | 4/14 | 40 | 9.5 | $519.75 | $47.50 | 40 | 11 | $535.50 | $57.75 | $997.50 | | $1,055.25 |
| 4/15 | 4/28 | 40 | 11.75 | $543.38 | $58.75 | 40 | 10.75 | $532.88 | $56.44 | $1,019.81 | | $1,076.25 |
| 4/29 | 5/12 | 40 | 11.25 | $538.13 | $56.25 | 40 | 10.75 | $532.88 | $56.44 | $1,014.56 | | $1,071.00 |
| 5/13 | 5/26 | 40 | 11.75 | $543.38 | $58.75 | 40 | 11.25 | $538.13 | $59.06 | $1,022.44 | | $1,081.50 |
| 5/27 | 6/9 | 40 | 12.25 | $548.63 | $61.25 | 40 | 20.25 | $632.63 | $106.31 | $1,074.94 | | $1,181.25 |
| 6/10 | 6/23 | 40 | 9.5 | $519.75 | $47.50 | 10.25 | | $107.63 | $0.00 | $627.38 | | $627.38 |
| | | | | | $1,157.50 | | | | $1,226.25 | | | |
| | | | | | | | | | $2,383.75 | | | |

*Facts Relating to Godinez's Housing Claim*

6. After hearing that Godinez was having difficulties in his personal life around February or March 2017, Coady generously suggested that Godinez live rent-free at one of

his homes.

7. Coady's offer was not a requirement of employment and was not a favor he extended customarily to employees of Applewood.

8. Godinez accepted Coady's offer and stayed at various properties between 2017 and 2018.

9. At no time did Applewood inform Godinez that the cost of Godinez's housing was part of the wages Godinez earned during his employment with Applewood and Applewood did not understand that to be the case.

*Facts Relating to Godinez's Claim about Assisting Groomers*

10. Applewood has agreements with pet groomers to work at Applewood as independent contractors.

11. During his employment with Applewood, Godinez sometimes separately worked for pet groomers who were independent contractors of Applewood, including Leticia Hernandez and Lowaunz Farrow.

12. The groomers operate their own companies—for example, Hernandez performs pet grooming for her company Pets Washy Wash, LLC.

13. The groomers are responsible for their own schedule, and determine which pets they groom.

14. The groomers have their own respective business licenses with the State of Arizona, and Applewood does not withhold money from the groomers for taxes.

15. The groomers purchase their own supplies for pet grooming.

16. The groomers are permitted to groom pets elsewhere than Applewood.

17. The groomers obtain clients through their own advertising.

18. Godinez offered to assist groomers working at Applewood during a few unspecified days, for which Godinez was paid cash directly by the groomers.

19. Godinez's work with independent contractors was in no way facilitated by Applewood or the other Defendants.

20. The groomers paid Godinez per day—oftentimes for differing amounts of hours.

21. Godinez's work with the groomers was entirely independent of his employment with Applewood, and Applewood lacked control over who or how groomers hired assistants like Godinez.

**Facts Relevant to Spurgeon's Claims**

22. While Spurgeon was a housekeeper at the W Hotel (working part-time there and part-time at Applewood as a kennel attendant), she asked Coady and Roberto De La Torre (Applewood's General Manager) if she could work exclusively at Applewood for $1,450 per pay period, based on working six days and 60 hours per week

23. Spurgeon came up with the $1,450 amount herself.

24. Based on the amount of hours Spurgeon asked to work and the amount of money she said she needed to make per week to pay her bills, Coady agreed that he would give her a raise to $10.50 per hour for the first 40 hours and $15.75 per hour as an overtime premium, totaling $1,470 per two-week pay period.

25. After agreeing to these hours and wage rates, Spurgeon requested that she be "off work" by 4:00 p.m. on Friday (and, therefore, miss two of the 60 hours she had agreed to work per week).

26. Coady agreed to pay Spurgeon for the four hours she would miss during each two-week pay period at a rate of $10.50 per hour, so Spurgeon would be paid $1,449 per two-week pay period [($10.50 multiplied by 80 hours)+($10.50 multiplied by 4 hours)+($15.75 multiplied by 36 hours)].

27. In addition to crediting Spurgeon with a regular rate of pay for the two hours per week over hours she was not required to work, Coady agreed to gift $1.00 per two weeks so that Spurgeon would receive her requested $1,450 per pay period to pay her bills.

28. During Spurgeon's employment (at least through early August 2018), she worked the following hours and was paid the following amounts per pay period:

| Drake S 2016 | | Week 1 Reg $10.5/hr | Week 1 OT $15.75/hr | Week 1 week pay | Week 2 Reg $10.5/hr | Week 2 OT $15.75/hr | Week 2 week pay | 2 week pay addition | Pay period amount | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/2 | 10/15 | 40 | 0.5 | $427.88 | 40 | 18 | $703.50 | $1,131.38 | $1,450.00 | |
| 10/16 | 10/29 | 40 | 15 | $656.25 | 40 | 15.75 | $668.06 | $1,324.31 | $1,450.00 | |
| 10/30 | 11/12 | 40 | 17.5 | $695.63 | 40 | 9.25 | $565.69 | $1,261.31 | $1,325.00 | |
| 11/13 | 11/26 | 40 | 8 | $546.00 | 40 | 17.5 | $695.63 | $1,241.63 | $1,317.50 | |
| 11/27 | 12/10 | 40 | 15.5 | $664.13 | 40 | 10.75 | $589.31 | $1,253.44 | $1,450.00 | |
| 12/11 | 12/24 | 40 | 17.25 | $691.69 | 40 | 14.75 | $652.31 | $1,344.00 | $1,450.00 | |
| 12/25 | 1/7 | 69.5 | | $729.75 | 40 | 7.5 | $538.13 | $1,267.88 | $1,450.00 | Vacation |
| 2017 | | | | | | | | | | |
| 1/8 | 1/21 | 40 | 17 | $687.75 | 40 | 14.75 | $652.31 | $1,340.06 | $1,450.00 | |
| 1/22 | 2/4 | 40 | 18 | $703.50 | 40 | 4 | $483.00 | $1,186.50 | $1,275.00 | |
| 2/5 | 2/18 | 40 | 14.5 | $648.38 | 40 | 17.5 | $695.63 | $1,344.00 | $1,450.00 | |
| 2/19 | 3/4 | 40 | 8 | $546.00 | 40 | 18.25 | $707.44 | $1,253.44 | $1,325.00 | |
| 3/5 | 3/18 | 40 | 5.5 | $506.63 | 40 | 7.75 | $542.06 | $1,048.69 | $1,173.60 | |
| 3/19 | 4/1 | 40 | 18 | $703.50 | 40 | 3.75 | $479.06 | $1,182.56 | $1,271.87 | |
| 4/2 | 4/15 | 40 | 17.5 | $695.63 | 40 | 15 | $656.25 | $1,351.88 | $1,406.25 | |
| 4/16 | 4/29 | 40 | 7.5 | $538.13 | 40 | 16.5 | $679.88 | $1,218.00 | $1,300.00 | |
| 4/30 | 5/13 | 40 | 12.5 | $616.88 | 40 | 18 | $703.50 | $1,320.38 | $1,450.00 | |
| 5/14 | 5/27 | 0 | | $0.00 | 40 | 8.25 | $549.94 | $549.94 | $600.00 | |
| 5/28 | 6/10 | 40 | 16.25 | $675.94 | 40 | 18 | $703.50 | $1,379.44 | $1,450.00 | |
| 6/11 | 6/24 | 40 | 18 | $703.50 | 40 | 10 | $577.50 | $1,281.00 | $1,350.00 | |
| 6/25 | 7/8 | 40 | 18.25 | $707.44 | 40 | 18.75 | $715.31 | $1,422.75 | $1,450.00 | |
| 7/9 | 7/22 | 40 | 7.75 | $542.06 | 40 | 18.25 | $707.44 | $1,249.50 | $1,450.00 | |
| 7/23 | 8/5 | 40 | 9.25 | $565.69 | 38.75 | | $406.88 | $972.56 | $1,100.00 | |
| 8/6 | 8/19 | 40 | 17.75 | $699.56 | 40 | 18 | $703.50 | $1,403.06 | $1,450.00 | |
| 8/20 | 9/2 | 40 | 17.75 | $699.56 | 40 | 18.75 | $715.31 | $1,414.88 | $1,450.00 | |
| 9/3 | 9/16 | 40 | 15.25 | $660.19 | 40 | 7.5 | $538.13 | $1,198.31 | $1,330.00 | |
| 9/17 | 9/30 | 37 | | $388.50 | 40 | 8.5 | $553.88 | $942.38 | $1,080.00 | |
| 10/1 | 10/14 | 59.5 | | $624.75 | 40 | | $420.00 | $1,044.75 | $1,250.00 | Vacation |
| 10/15 | 10/28 | 40 | 8.5 | $553.88 | 40 | 7.75 | $542.06 | $1,095.94 | $1,250.00 | |
| 10/29 | 11/11 | 40 | 6.5 | $522.38 | 40 | 7 | $530.25 | $1,052.63 | $1,250.00 | |
| 11/12 | 11/25 | 40 | 6.75 | $526.31 | 40 | 21.5 | $758.63 | $1,284.94 | $1,375.00 | |
| 11/26 | 12/9 | 40 | 7.5 | $538.13 | 40 | 7.5 | $538.13 | $1,076.25 | $1,250.00 | |
| 12/10 | 12/23 | 40 | 7.5 | $538.13 | 40 | 19.75 | $731.06 | $1,269.19 | $1,450.00 | |
| 12/24 | 1/6 | 40 | 20 | $735.00 | 40 | 17.5 | $695.63 | $1,430.63 | $1,450.00 | |
| 2018 | | | | | | | | | | |
| 1/7 | 1/20 | 40 | 7.5 | $538.13 | 40 | 8.75 | $557.31 | $1,095.94 | $1,450.00 | |
| 1/21 | 2/3 | 40 | 18.5 | $711.38 | 40 | 13.5 | $632.63 | $1,344.00 | $1,450.00 | |
| 2/4 | 2/17 | 40 | 9 | $561.75 | 40 | 18 | $703.50 | $1,265.25 | $1,325.00 | |
| 2/18 | 3/3 | 40 | 19 | $719.25 | 69.5 | | $729.75 | $1,449.00 | $1,450.00 | Vacation |
| 3/4 | 3/17 | 40 | 7.5 | $538.13 | 38.5 | | $404.25 | $942.38 | $1,200.00 | |
| 3/18 | 3/31 | 40 | 16.75 | $683.81 | 40 | 7 | $530.25 | $1,214.06 | $1,313.00 | |
| 4/1 | 4/14 | 40 | 19.25 | $723.19 | 40 | 8.25 | $549.94 | $1,273.13 | $1,450.00 | |
| 4/15 | 4/28 | 40 | 8.25 | $549.94 | 40 | 7.25 | $534.19 | $1,084.13 | $1,450.00 | |
| 4/29 | 5/12 | 40 | 17.25 | $691.69 | 40 | 17 | $687.75 | $1,379.44 | $1,450.00 | |
| 5/13 | 5/26 | 40 | 7.5 | $538.13 | 40 | 17.75 | $699.56 | $1,237.69 | $1,325.00 | |
| 5/27 | 6/9 | 40 | 17.5 | $695.63 | 40 | 17.75 | $699.56 | $1,395.19 | $1,450.00 | |
| 6/10 | 6/23 | 40 | 15.25 | $660.19 | 40 | 12 | $609.00 | $1,269.19 | $1,450.00 | |
| 6/24 | 7/7 | 40 | 17.75 | $699.56 | 40 | 18.5 | $711.38 | $1,410.94 | $1,450.00 | |
| 7/8 | 7/21 | 40 | 8.5 | $553.88 | 40 | 17.75 | $699.56 | $1,253.44 | $1,450.00 | |
| 7/22 | 8/4 | 40 | 18 | $703.50 | 40 | 17.5 | $695.63 | $1,399.13 | $1,450.00 | |
| | | | | $29,306.81 | | | $29,843.63 | | | |
| | | | | | | | | $59,150.44 | $65,092.22 | |

29. As is evident from the above spreadsheet, Spurgeon did not work the 58 hours per week she agreed to work.

30. Nonetheless, Spurgeon was overpaid $5,941.78 (partly due to good-faith calculation mistakes by Applewood employees De La Torre and Sarah Workman) when comparing the hours she worked multiplied by the wages for which she agreed to work.

## **PROPOSED CONCLUSIONS OF LAW**

1. This action was brought pursuant to the Fair Labor Standards Act ("FLSA").

2. Plaintiffs allege that Defendants violated FLSA Sections 7 and 15(a)(2), 29 U.S.C. §§ 207 and 215(a)(2), by not paying an applicable overtime premium to Plaintiffs Spurgeon and Godinez for hours worked over 40 hours per week.

3. As is relevant to this case—and unless otherwise agreed-to by an employer and employee, as is the case with Spurgeon—the following is the method for determining compensation during weeks when the employee worked more than 40 hours:

   a. The regular hourly rate of pay is computed by adding together total wages from the workweek.

   b. This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the employee's "regular rate" for that week.

   c. For overtime work, the employee is entitled to be paid, in addition to the total weekly earnings, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked over 40 in the week.

   d. For example:

      i. If the employee has worked 50 hours and has earned $523.00 for 50 hours of work, $523.00 must be divided by the total hours of work (50) to arrive at the regular hourly rate of pay—$10.46.

      ii.      One-half of the hourly rate of $10.46 is $5.23. For the 10 hours of overtime, the employee is entitled to additional compensation of $52.30 (10 hours of overtime at $5.23).

      iii.      For the week's work the employee is thus entitled to a total of $575.30 (which equals $523.00 plus the $52.30 of premium overtime pay).

29 C.F.R. §§ 776.4, 778.109, 778.111; *Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 (9th Cir. 1975).

    4.    To prevail on their overtime claim, Spurgeon and Godinez must prove each of the following facts by a preponderance of the evidence:

      a.    That the Spurgeon and Godinez were employed by the Applewood;

      b.    That Spurgeon and Godinez were engaged in commerce or in the production of goods for commerce;

      c.    That Spurgeon and Godinez worked more than 40 hours in a workweek for Applewood; and

      d.    Applewood did not pay Spurgeon and Godinez the overtime pay as required by law.

29 U.S.C. § 207(a), (g); 29 C.F.R. § 778.111; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (recognizing a plaintiff must prove the number of unpaid hours worked); 29 C.F.R. § 785.11; *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime is not a violation of § 207"); *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (placing on the employee/plaintiff the burden of proving the employee/plaintiff performed work for which he was not compensated).

    5.    The parties stipulate to the first two facts—that Spurgeon and Godinez were employed by Defendants and were engaged in commerce.

6. As to the remaining two facts, the parties agree and have stipulated that Applewood owes Godinez $2,383.75 in unpaid wages but Godinez has failed to establish he is entitled to any additional amount of unpaid wages.

7. Spurgeon has failed to meet her burden to prove by a preponderance of the evidence that she worked more than 40 hours per week for which she was not compensated the applicable overtime premium.

**Godinez's Work for Independent Contractor Groomers Is Not Attributable to Applewood**

8. Whether a person is considered an independent contractor or employee is determined by a non-exhaustive list of factors, including:

    a. The degree of the alleged employer's right to control the manner in which the work is to be performed;

    b. The alleged employee's opportunity for profit or loss depending upon his managerial skill;

    c. The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

    d. Whether the service rendered requires a special skill;

    e. The degree of permanence of the working relationship; and

    f. Whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citing *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)).

9. The groomers who sometimes work at Applewood (and for whom Godinez sporadically worked) are independent contractors given the lack of control Applewood has over the groomers, the ability for the groomers to set their own schedule and fix their own rates, the groomers' responsibility for their own supplies and performing their own advertising, the special skill required to be a pet groomer, and the state licensing scheme to be a groomer, among the other factors.

10. Two or more employers may jointly employ someone for purposes of the FLSA and joint employers are jointly and severally liable for FLSA violations with respect to their employees. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); 29 C.F.R. § 791.2(f); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).

11. The question of whether an entity is a joint employer is a legal question for the court to resolve. *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004) (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)).

12. The Ninth Circuit applies the *Bonnette* economic reality test to determine whether an entity is an employer under the FLSA, which considers whether the alleged joint employer:

    a. Had the power to hire and fire the employees;

    b. Supervised and controlled employee work schedules or conditions of employment;

    c. Determined the rate and method of pay; and

    d. Maintained employment records.

*See Bonnette*, 704 F.2d at 1470; *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 U.S. Dist. LEXIS 93806, at *7–9 (D. Ariz. July 10, 2014) (using the *Bonnette* factors to determine question of joint employment).

13. Courts within the Ninth Circuit use the *Torres-Lopez* factors "to supplement the *Bonnette* factors when determining joint employment," which include:

    a. Whether the work was a specialty job on the production line

    b. Whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;

    c. Whether the premises and equipment of the employer are used for the work;

|   |   |   |
|---|---|---|
| | d. | Whether the employees had a business organization that could or did shift as a unit from one worksite to another; |
| | e. | Whether the work was "piecework" and not work that required initiative judgment or foresight; |
| | f. | Whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill; |
| | g. | Whether there was permanence in the working relationship; and |
| | h. | Whether the service rendered is an integral part of the alleged employer's business. |

*Montoya*, 2014 U.S. Dist. LEXIS 93806, at *8–9 (citing *Torres-Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997).

14. Godinez has not shown that the hours he worked for groomers at Applewood should be factored into his regular rate because Applewood is not a joint employer alongside its groomers.

15. Among other factors, Godinez's employment relationship with any groomers who happened to work at Applewood is entirely separate from his employment with Applewood and Applewood lacks any discretion on who the groomers hire to assist their work.

**Godinez Has Not Shown that His Wages Should Be Supplemented by the Fair Market Value of Housing Provided by Defendant Coady**

16. Housing provided to an employee is only considered part of the employee's "wages" for purposes of calculating the regular rate if such housing is customarily furnished to the employer's employees. *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945); *see also* 29 U.S.C. § 203(m) (defining "wage" to include the "the reasonable cost, as determined by the Administrator [Secretary], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."); 29

C.F.R. 778.116 (recognizing cost of lodging included as part of calculating the regular rate if it is "regarded as part of wages").

17. Housing is "customarily" furnished only if "the facilities are furnished regularly by the employer to his employees or if the same or similar facilities are customarily furnished by other employees engaged in the same or similar trade, business, or occupation in the same or similar communities." 29 C.F.R. § 531.31.

18. Godinez has not shown that housing has been customarily furnished by Applewood or that other companies in the pet resort industry furnish housing to employees.

**Spurgeon Has Not Shown that She Is Entitled to a Higher Regular Rate than the Rate She Negotiated with Applewood**

19. "[W]hen a weekly salary is paid, the employer is deemed to have paid the same rate for all hours worked, rather than the requisite overtime compensation, unless it can demonstrate the existence of a mutual agreement regarding the regular rate to be paid for the first forty hours." *Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 801 (9th Cir. 1981); *Brennan*, 515 F.2d at 106.

20. Unintentional overpayments are not calculated as part of the regular rate but instead can be credited toward FLSA overtime. *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 334 (S.D.N.Y. 2012); *see also Jones v. Addictive Behavioral Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1267–68 (D. Kan. 2019).

21. The evidence shows that Applewood and Spurgeon entered into an agreement that Spurgeon would be entitled to a wage of $10.50 per hour as a regular rate and $15.75 per hour as an overtime premium with the expectation that she would work 58 hours per week—thus, Spurgeon has not shown that she is entitled to a higher overtime premium simply because she did not work 58 hours each week.

22. Alternatively, to the extent the Court has found any violation of the FLSA, the Court holds that such violation was not willful. *See, e.g.*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (recognizing an employer acts willfully only if the employer

1  "knew or showed reckless disregard for the matter of whether its conduct was prohibited
2  by the statute").
3
4  Based on these findings of fact and conclusions of law, this Court **ORDERS** that judgment
5  be entered in favor of the Defendants on all claims and against Plaintiffs.
6
7        DATED this 20th day of May, 2021.
8                                  BALLARD SPAHR LLP
9
10                           By  /s/ *Mitchell L. Turbenson*
11                                Jay A. Zweig
                               Melissa R. Costello
12                                1 East Washington Street, Suite 2300
                               Phoenix, AZ 85004-2555
13                                Attorneys for Defendants
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28